[No. 22116.   Department Two.   December 10, 1929.]

PRUDENCE FREEMAN *et al.*, *Respondents*, v. ANNA B. FREEMAN, *as Administratrix, Appellant.*[1]

*Crandell & Crandell* and *Bertil E. Johnson,* for appellant.

*Rex S. Roudebush,* for respondents.

FULLERTON, J.—On November 19, 1927, one Fred W. Freeman died intestate in Pierce county, Washington,

[1]Reported in 282 Pac. 845.

leaving an estate therein consisting of real and personal property. On December 13, 1927, his widow, Anna B. Freeman, was duly appointed as administratrix of his estate. Freeman had been married prior to his marriage with the administratrix, and left surviving him a daughter and a son, the issue of the earlier marriage. In due time after the appointment of the administratrix, the daughter and the son severally presented claims against his estate for moneys received by him in his lifetime as their guardian and for which he had not accounted. The administratrix rejected the claims, and the present action was begun to establish them as lawful claims against the estate, and to recover over against the administratrix personally. The court allowed a recovery as demanded in the complaint, and further adjudged:

". . . that said plaintiffs' joint judgment against said defendant shall be satisfied by the application of the separate property of the defendant, Anna B. Freeman, . . . and that in case said defendant's said separate property should prove to be insufficient to satisfy plaintiffs' joint judgment, then and in that event it is ordered, adjudged and decreed that the deficiency judgment remaining unpaid shall be satisfied from the property and assets of said decedent's estate to which the plaintiffs or any other parties may be entitled by inheritance or otherwise."

The claimants are of Indian descent, and by reason thereof were entitled to receive certain moneys from the government of the United States arising from the sale of Indian lands. During their minority there was paid to the father $1,209.29 on behalf of the daughter, and $1,847.20 on behalf of the son. These sums were paid after the father intermarried with the administratrix, and were commingled with their community and separate funds and used in common therewith for the maintenance of the family. The record, in so far

as it has been brought to this court, does not disclose all of the property of which the father died seized, nor does it show its appraised value. Indirectly, it appears that the community, at the time of the death of Freeman, had outstanding loans, secured by mortgage, to the amount of $2,450, and $1,502 on deposit in a bank. It also appears that there was other personal property, consisting of an automobile, farming utensils, household furniture, and the like, and that Freeman died seized of an undivided half interest in a twenty-acre tract of land which he owned as separate property, and which had a considerable value. The other undivided half of the real property was owned in equal moieties by the daughter and son, it being an inheritance which they received from their mother.

As a defense to the claims, the administratrix sought to set off certain expenditures made by the community on behalf of the claimants. As against the daughter, she sought to set off a claim for board in the sum of $640, payments on an insurance policy amounting to $118.10, taxes paid on her part of the lands mentioned, amounting to $501, and sums expended for permanent improvements placed on the land to the amount of $136.62. As against the son, she sought to set off like sums paid for insurance, taxes, permanent improvements, and a further sum of $1,783.29, paid on his behalf as expenses while he was in attendance as a student at the University of Washington.

The trial court refused to allow the set-offs claimed by the administratrix, and its action in that behalf forms the basis of the first of the errors assigned. But we think the evidence justifies the holding of the court. The community not only had the benefit of the use of the money of the claimants, but they had the income from the shares they held in the real property. The real property has at all times produced an

income, and, conceding that all of the expenditures set forth by the administratrix are such as could be charged against the claimants, the evidence does not show that the share of the claimants in this income was less than the expenditures.

█ It is next assigned that the court erred in entering a personal judgment against the administratrix, and with this assignment we are constrained to agree. The judgment is founded on the principle that the use made of the money by the community was wrongful and that the administratrix knowingly and willfully participated in the wrong. It is conceded, of course, that the use made of the moneys of the wards was wrongful, but we cannot concede that the evidence justifies the conclusion that the administratrix so far participated therein as to render her personally liable. It must be remembered that these funds were paid to the father as guardian of the claimants, not as a member of the community composed of himself and wife, and that he first caused it to be intermingled with the community funds. The wife's participation in its use arose after it was so commingled, and there is nothing to show that she did not do so innocently and in ignorance of the rights of the claimants. Nor did the administratrix profit personally by the use of the money further than did any other member of the family. The money simply went into the common fund and was used in the support of the family generally, the claimants as well as the father and the now administratrix. The administratrix, moreover, had at all the times a small income of her own. This, to the extent of $1,800 or more, also went into the common fund. Since the money was placed in the community funds and used by the community, the community property should be held liable for its return; but there is no reason in law or equity why the administratrix's personal estate

should be charged with its return to the exclusion of the community property.

The court allowed interest on the amount found to be due the claimants at the statutory rate and allowed the interest to be compounded annually. This we also think was error. Compound interest is not favored in law. Simple interest is regarded as a sufficient compensation for the use of money. The courts that allow interest to be compounded against trustees, guardians, and the like, do so as a punishment for gross neglect, mismanagement or misconduct in the execution of the trust. But punishment in such cases is and should be visited on the guilty party. Here, the administratrix was not the guilty party, and, since the guardian was not required to account in his lifetime, we think it sufficient to allow simple interest on the claims, and allow the claims to be preferred, as the court did allow, over all other claimants deriving rights in the estate under and through the guardian.

The judgment will be reversed and the cause remanded with instructions to enter a judgment in accordance with the views herein expressed. Neither party will be allowed costs in this court.

MITCHELL, C. J., MAIN, FRENCH, and HOLCOMB, JJ., concur.